**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**HENRY L. BEBA, JR.**                                  CIVIL ACTION

**VERSUS**                                              No. 25-2530

**NEW ORLEANS CITY, ET AL.**                            SECTION I

<u>**ORDER AND REASONS**</u>

Before the Court are four motions: two motions[1] to dismiss plaintiff Henry L. Beba's ("Beba") second amended complaint[2] (the "complaint"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, filed by defendants New Orleans City ("New Orleans"), Armand M. Bourdais ("Bourdais"), Shannon R. Delavallade ("Delavallade"), Tomekia T. Edmond-Dunkley ("Edmond-Dunkley"), Timothy R. Favaza, Roman Nelson ("Nelson"), and Larry White ("White") (collectively, "defendants"); defendants' motion[3] for partial summary judgment, arguing that Beba's Title VII failure to promote claims are untimely or are not administratively exhausted; and Beba's motion[4] for leave to file a third amended complaint.

---

[1] R. Doc. No. 16. Although defendants' motion is stylized as a motion to dismiss Beba's first amended complaint, defendants were not "required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending." *Rountree v. Dyson*, 892 F.3d 681, 683–84 (5th Cir. 2018). As such, the Court will consider R. Doc. No. 16 as a motion to dismiss Beba's seconded amended complaint.

[2] R. Doc. No. 20.

[3] The motion for partial summary judgment was converted from a Rule 12(b)(6) motion to dismiss pursuant to Rule 12(d), solely with respect to whether Beba's Title VII failure to promote allegations were timely and administratively exhausted. *See* R. Doc. No. 29.

[4] R. Doc. No. 34.

For the following reasons, defendants' motion to dismiss for a lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is denied and defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is granted. Additionally, defendants' motion for partial summary judgment, arguing that Beba's Title VII failure to promote claims are untimely or not administratively exhausted, is granted in part and denied in part. Finally, Beba's motion for leave to file a third amended complaint is denied. As this order and reasons resolves all of Beba's claims against defendants, and further amendment to his complaint is futile, the Court will dismiss this action with prejudice.

## I.    PROCEDURAL HISTORY

On December 19, 2025, Beba filed his original complaint, alleging eight causes of action.[5] Shortly thereafter, defendants moved[6] to dismiss Beba's complaint pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. Beba subsequently filed his first amended complaint[7] and voluntarily dismissed Counts I, IV, and VII of his complaint,[8] which respectively alleged claims pursuant to the Americans with Disabilities Act, the Age Discrimination in Employment Act, and the Equal Protection Clause of the Fourteenth Amendment.[9]

---

[5] *See generally* R. Doc. No. 1.
[6] R. Doc. No. 9.
[7] R. Doc. No. 11.
[8] *See* R. Doc. No. 15.
[9] *Id.*

Defendants then filed a motion[10] to dismiss Beba's first amended complaint. Beba filed a response in opposition,[11] and defendants replied.[12] While defendants' motion to dismiss Beba's first amended complaint was pending, the Court granted Beba leave to file his second amended complaint.[13] Beba's second amended complaint,[14] the operative complaint, alleges the following causes of action:[15] Count II, Family and Medical Leave Act ("FMLA") interference and retaliation;[16] Count III, Title VII race discrimination, specifically disparate treatment in the administration of discipline and employment benefits;[17] Count V, First Amendment retaliation through 42 U.S.C. § 1983;[18] Count VI, procedural due process violations through § 1983;[19] and Count VIII, § 1983 municipal liability[20] for the constitutional violations asserted in Counts V and VI.[21]

---

[10] R. Doc. No. 16.

[11] R. Doc. No. 17.

[12] R. Doc. No. 18.

[13] R. Doc. No. 19.

[14] R. Doc. No. 20.

[15] Excluding the voluntarily dismissed Counts I, IV, and VII.

[16] R. Doc. No. 20 ¶ 115. Count II is brought against defendant New Orleans only. *Id.*

[17] *Id.* ¶¶ 127–130. Count III is brought against defendant New Orleans only. *Id.* ¶ 117.

[18] *Id.* ¶¶ 135–36. Count V is brought against defendants Nelson, Bourdais, White, and Delavallade, all in their individual capacities, and defendant New Orleans. *Id.* ¶ 134.

[19] *Id.* ¶¶ 138, 140. Count VI is brought against defendants Nelson and Bourdais in their individual capacities, and defendant New Orleans. *Id.* ¶ 137.

[20] Municipal liability for constitutional violations, brought pursuant to § 1983, is sometimes called, as Beba does, *Monell* liability, in reference to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

[21] *Id.* ¶¶ 143, 147. Count VIII is brought against defendant New Orleans only. *Id.* ¶ 141. The Court notes that Count VIII is redundant of the same constitutional claims already alleged against New Orleans in Counts V and VI. As Beba separately alleges

Rather than require defendants to file yet another motion to dismiss, the Court allowed the parties to supplement their existing briefing with respect to claims raised in Beba's second amended complaint.[22] Defendants filed a supplemental memorandum addressing defects newly raised in the second amended complaint,[23] and Beba filed a supplemental response[24] in opposition. Subsequently, the Court informed the parties of its intent to consider defendants' motion to dismiss, solely with respect to Beba's claims of discriminatory promotion ("failure to promote"),[25] as a motion for partial summary judgment pursuant to Rule 12(d) and Rule 56.[26] The parties provided supplemental briefing on the issue, addressing whether Beba's failure to promote claims were timely and administratively exhausted pursuant to 42 U.S.C. § 2000e-5(e).[27] However, while the motions were still pending, Beba requested leave to amend his complaint once again.[28] At the Court's direction, the parties filed additional supplemental memoranda regarding the amendments raised in Beba's proposed third amended complaint.[29] With briefing now complete, the Court will address the pending motions.

---

the facts supporting his municipal liability claims in Count VIII, the Court will address Count VIII separately.

[22] R. Doc. No. 19.

[23] R. Doc. No. 26.

[24] R. Doc. No 28.

[25] Beba sometimes refers to these claims as "disparate promotion." *See, e.g.*, R. Doc. No. 20 ¶¶ 124–126. Courts generally refer to such claims as "failure to promote" claims. *See, e.g.*, *Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 337 (5th Cir. 2023).

[26] R. Doc. No. 29.

[27] *See* R. Doc. Nos. 32, 33.

[28] R. Doc. No. 34.

[29] *See* R. Doc. Nos. 35–37.

## II.    BACKGROUND

Beba is a white, male district chief for the New Orleans Fire Department ("NOFD").[30] He first joined NOFD in 1991, and from August 5, 2018 until March 20, 2025, Beba was assigned as a district chief to the "8th District, Second Platoon (Station 508)," an "assignment" he obtained through a "seniority-based . . . system."[31]

In January 2025, Beba enrolled in "an EMT-BASIC program at Delgado Community College."[32] As an introductory assignment, Beba and other students in the class responded to a series of prompts, including, "[t]ell us what's got you [sic] interested in EMS (YES, EVEN YOU FIRE . . . )."[33] In response to this prompt, on January 20, 2025, Beba wrote:

> I'll be candid—I initially had no plans to pursue my Basic-EMT certification. My focus was on advancing through the promotional ranks, a path that included rigorous training, setting personal goals, and achieving professional milestones. However, after experiencing setbacks in the promotional process and not being a DEI candidate after passing the Deputy Chief Promotional Exam at #6 only to be passed over by the last person on the list at #14 because he fits more the description of a DEI promotion, I realized that pursuing my EMT certification could provide a meaningful way to enhance my skills, help others, and secure a 5% increase in my pension going forward cutting my loss of not getting the promotional 10%.
>
> More importantly, this certification will equip me to better assist others, especially family members, in times of medical need.[34]

---

[30] R. Doc. No. 20 ¶ 1.
[31] *Id.* ¶¶ 29, 30.
[32] R. Doc. No. 20 ¶ 43.
[33] *See id.*; R. Doc. No. 18-3, at 4.
[34] *Id.* at 7.

Beba's response was visible on the online discussion board to his classmates, including multiple members of NOFD.[35] Beba's statements were ultimately shared with members of NOFD outside of the EMT course, including with the individual that he referred to as a "DEI candidate."[36] Shortly thereafter, NOFD leadership became aware of Beba's "derogatory comments," and on February 6, 2025, he received a disciplinary charge for violating NOFD's Workplace Harassment & Discrimination Policy.[37] Following the issuance of the disciplinary charge, an investigation occurred.[38]

While the initial disciplinary process regarding these comments was pending, Beba was reassigned from his post in the 8th District on March 20, 2025.[39] Beba was listed as one of five NOFD district chiefs reassigned in an email from defendant Bourdais.[40] While the four other district chiefs were transferred to specific stations, Beba was reassigned as a district chief for "Staff platoon 2."[41] District Chief Thomas Ussin ("Ussin") was transferred to fill Beba's previous assignment with "[Station] 508 platoon 2."[42] Beba, Ussin, and a third district chief were designated as "operational" transfers.[43] Beba alleges that, before his March 2025 transfer, he had submitted

---

[35] *See generally id.* (providing responses to the introductory prompt from members of the EMT course with multiple individuals representing they are members of NOFD); *see also* R. Doc. No. 18-2, at 5–6.

[36] R. Doc. No. 16-12, at 2–3.

[37] *See* R. Doc. No. 18-2, at 5; R. Doc. No. 20 ¶ 57.

[38] *Id.* ¶ 58.

[39] *Id.* ¶ 66.

[40] R. Doc. No. 16-2.

[41] *Id.*

[42] *Id.*

[43] *Id.*

complaints to his supervisor concerning Ussin for "responding to incidents in a personal vehicle,"[44] "sleeping at home while on duty[,] and responding to incidents improperly."[45]

According to Beba, his reassignment was the result of racial discrimination, in violation of Title VII, and retaliation for protected speech, in violation of the First Amendment.[46] Beba posits that, despite being informed that the reassignment was not a disciplinary action, it was, in fact, disciplinary.[47] He submitted "an official Employee Grievance [form]" with respect to his reassignment on March 23, 2025.[48]

That same day, Beba suffered a "medical episode" while on duty and was subsequently "diagnosed with adjustment disorder with mixed anxiety and depressed mood."[49] Beba has associated his medical episode with his reassignment and remained on leave, without an anticipated "return-to-work" date.[50] On April 8, 2025, he received retroactive authorization for FMLA leave beginning on March 25, 2025.[51] His FMLA leave expired in June 2025, and he has not returned to work due to his

---

[44] R. Doc. No. 20 ¶ 40.

[45] *Id*. ¶ 41.

[46] *Id*. ¶¶ 121, 135–36.

[47] *See id*. ¶¶ 54, 66 (alleging that the reassignment was a disciplinary action); *see also* R. Doc. No. 16-9, at 1–2 (Beba, stating in a letter to the Louisiana Civil Service Commission, that NOFD had informed him that his reassignment was "not a disciplinary action.").

[48] *Id*. at 1.

[49] R. Doc. No. 20 ¶¶ 75–76.

[50] *See* R. Doc. No. 16-1, at 5; R. Doc. No. 16-9, at 1–2.

[51] R. Doc. No. 20 ¶ 77.

ongoing medical situation and alleged "on-duty injur[ies]," including a knee replacement in August 2025.[52]

The NOFD disciplinary process regarding Beba's statements during the EMT culminated on March 26, 2025, when he was informed via letter that NOFD was imposing a six-hour suspension for his statements.[53] Shortly thereafter, Beba appealed the disciplinary decision and a Louisiana Civil Service Commission ("CSC") hearing was held in May 2025, during which both NOFD and Beba "had an opportunity to call witnesses and present evidence."[54] The CSC stated that "[t]he [NOFD] disciplinary hearing panel recommend[ed] the maximum penalty because of Chief Beba's leadership position and the egregious nature of the comments."[55] The CSC ultimately denied Beba's appeal, finding that "based on his leadership position within the organization [and his derogatory statements] . . . [the six-hour suspension was] commensurate with the violation."[56] The CSC also rejected Beba's arguments that his conduct did not impair efficient operation of NOFD "because it was only viewable by the members of the EMT class" and he was off-duty at the time.[57]

While the disciplinary process regarding his statements in the EMT class was proceeding, Beba received a separate "Notice of Investigation" on April 23, 2025.[58] This new investigation concerned "an email exchange between [Beba] and another

---

[52] R. Doc. No. 1 ¶¶ 32–33, 36–38.
[53] R. Doc. No. 16-12, at 2.
[54] *Id.* at 1.
[55] *Id.* at 3.
[56] *Id.* at 6.
[57] *Id.*
[58] *See* R. Doc. No. 20 ¶ 78; R. Doc. No. 16-4.

District Chief" that occurred on March 20, 2025, the same day as Beba's reassignment.[59] The notice informed Beba that NOFD was investigating potential violations of "NOFD Rules & Regulations RR-21 which states: Members shall be courteous and respectful when dealing with each other . . . [and] shall not use threatening, abrasive, insulting indecent or profane language."[60] However, the parties have not provided this Court with any additional context regarding the impetus, status, or outcome of this investigation.

Approximately two months thereafter, Beba received notification of a pre-termination hearing scheduled for July 16, 2025.[61] The notice represented that due to Beba "be[ing] unable to perform [his] job duties for an extended period,"[62] resulting from his absence for "adjustment disorder,"[63] "the Fire Department deem[ed] it necessary to meet with [him] to discuss the status of [his] recovery, and to assess [his] plans for returning to work."[64] The notification also stated that NOFD was willing to provide a "light-duty" assignment as an accommodation while Beba was recovering, but that NOFD's "obligation[] to adequately staff the department and provide emergency services . . . does not afford the ability to grant [Beba] permanent light-duty, or to keep [him] on the active roster indefinitely."[65] If Beba was unable to return

---

[59] R. Doc. No. 16-4.

[60] *Id.*

[61] *See* R. Doc. No. 20, at 83; R. Doc. No. 16-5.

[62] *Id.*

[63] R. Doc. No. 16-1, at 4.

[64] R. Doc. No. 16-5.

[65] *Id.*

9

to his duties "within a reasonable amount of time," the letter warned that NOFD may need to pursue involuntary retirement.[66]

The same day as his first pre-termination hearing in July 2025, Beba filed a CSC appeal regarding his March 2025 reassignment.[67] However, as CSC appeals must be submitted within thirty days of the underlying disciplinary action, the CSC denied Beba's appeal as time-barred.[68] Beba has since appealed the CSC's procedural denial to the Louisiana Fourth Circuit Court of Appeals, where the matter is currently pending.[69]

Beba also filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 23, 2025, EEOC Charge No. 461-2025-03066.[70] Beba's EEOC complaint stated:

> I am a white male . . . I allege discrimination based on race (white) . . . and retaliation.
>
> Throughout my career . . . I have [] experienced a pattern of discriminatory promotion practices, where lower-ranked Black candidates were promoted ahead of me despite my higher standing on the promotional registry. I referenced this history during my EMT course introduction in January 2025, which I believe directly triggered the retaliation . . . On February 6, 2025, I was charged with workplace harassment/discrimination over that EMT course introduction . . . I was abruptly removed from my long-held permanent assignment as 8th District Chief, Second Platoon, and replaced by a Black chief, Thomas Ussin, who had less seniority. The Superintendent confirmed this was not for disciplinary reasons but claimed he had the discretion to do so.[71]

---

[66] *Id.*

[67] R. Doc. No. 16-10.

[68] *Id.*

[69] *Beba v. Dep't of Fire*, No. 2025-0870 (La. App. 4th Cir. filed Jan. 27, 2026); *see also* R. Doc. No. 16-1, at 12.

[70] R. Doc. No. 9-3, at 7.

[71] *Id.* at 7–8.

Beba received notice of his right to sue, with respect to these claims, from the EEOC on or about September 24, 2025.[72]

In October 2025, while still on leave for his adjustment disorder, Beba received notification of a second pre-termination hearing scheduled for November 25, 2025.[73] The purpose of this subsequent hearing was the same as the one held in July 2025— to discuss Beba's "plans for returning to work"—and again offered a light-duty accommodation and warned of the potential for involuntary retirement.[74] After the November hearing, in a letter dated December 9, 2025, NOFD notified Beba that it would involuntarily retire him, effective January 2, 2026.[75] Beba appealed his termination to the CSC, and the parties have since entered into a settlement agreement reinstating Beba's employment as a district chief, retroactive to the effective date of his involuntary retirement.[76]

Beba also brought separate, now-settled state-law claims before the CSC regarding his employment benefits.[77] Following this settlement, Beba voluntarily dismissed his claims alleging causes of action pursuant to the Americans with Disabilities Act, the Age Discrimination in Employment Act, and the Equal Protection Clause of the Fourteenth Amendment.[78]

---

[72] R. Doc. No. 20 ¶ 18.

[73] *Id.* ¶ 83; R. Doc. No. 16-6.

[74] *Id.*

[75] R. Doc. No. 20 ¶ 84; R. Doc. No. 16-7.

[76] *Id.* ¶¶ 86, 87.

[77] *Id.* ¶ 8.

[78] R. Doc. No. 15. These claims correspond respectively with counts one, four, and seven of the first amended complaint. *See* R. Doc. No. 11 ¶¶ 100–106, 115–119, 127–129.

11

On April 22, 2026, the Court granted Beba leave to file a second amended complaint with respect to his Title VII claims.[79] Beba's complaint details three additional disparate treatment allegations that fall outside of the general timeline of his other claims: (1) that "lower-ranked African American candidates,"[80] Herman Franklin (the "March 2022 promotion"), Zachary Gremillion (the "August 2024 promotion"), and Ryan Woods (the "December 2025 promotion") were promoted over Beba; (2) that an African American district chief, Jerome Baudy, emailed Beba instructing him to "stay out of [his] district" and "accus[ed] [Beba] of misconduct," but Baudy was not investigated or disciplined after Beba reported the incident; and (3) that an African American deputy chief, Larry White, received on-duty injury ("ODI") status for medical leave "during the same general time period" that Beba's request for the same status was denied.[81]

### III.   STANDARDS OF LAW

#### A.   12(b)(1) Motion to Dismiss

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). Under Federal Rule of Civil Procedure 12(b)(1), "a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to

---

[79] R. Doc. No. 19.

[80] The Court construes "lower-ranked" to mean ranked lower in terms of "seniority." *See id.* at 3, 5, 138 (claiming that NOFD promotions are "seniority-based"). Beba has not alleged any other basis for the "ranking" to which he refers.

[81] R. Doc. No. 20 ¶¶ 117–131.

adjudicate' the claim." *Id.* (citation omitted). Courts are to consider Rule 12(b)(1) jurisdictional arguments before addressing any other arguments on the merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

When ruling on a Rule 12(b)(1) motion, a court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. When a court determines that it does not have subject matter jurisdiction over an action, the action is dismissed without prejudice. *See, e.g., id.*; *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

### B.      12(b)(6) Motion to Dismiss

Pursuant to Rule 12(b)(6), a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, "plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim," and the Court does "not accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (first citing *Twombly*, 550 U.S. at 555; and then quoting *Iqbal*, 556 U.S. at 678).

Furthermore, "the Court must typically limit itself to the contents of the pleadings, including attachments thereto." *Admins. of the Tulane Educ. Fund v. Biomeasure, Inc.*, No. 08-5096, 2011 WL 4352299, at *3 (E.D. La. Sept. 6, 2011) (Vance, J.) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). The Court may consider all "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[82] *Tellabs, Inc. v.*

---

[82] Courts "may consider documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Sullivan v. Leor*

14

*Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). "It is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."[83] *Jenkins v. Tahmahkera*, 151 F.4th 739, 747 (5th Cir. 2025) (quotations omitted).

"Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)) (alteration in original).

---

*Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quotation marks and citations omitted).

The Court considered the following documents filed as exhibits by defendants, and incorporated by reference in Beba's complaint: R. Doc. No. 9-3, at 7–8 (EEOC complaint signed by Beba, dated Sep. 23, 2025); R. Doc. No. 16-2 (email and transfer list from Armand M. Bourdais to Beba and others, dated Mar. 20, 2025); R. Doc. No. 16-3 (Beba NOFD Work Status Form, dated Mar. 27, 2025); R. Doc. No. 16-4 (Notice of Investigation, from Timothy Favaza to Beba, dated Apr. 23, 2025); R. Doc. No. 16-5 (Notification of Pre-Termination Hearing, from Roman Nelson to Beba, dated June 18, 2025); R. Doc. No. 16-6 (Notification of Pre-Termination Hearing, from Roman Nelson to Beba, dated Oct. 16, 2025); R. Doc. No. 16-7 (Beba Whistle Blower Appeal Form, file stamped, Jul. 16, 2025); R. Doc. No. 16-8 (Notice of Termination, from Roman Nelson to Beba, dated Dec. 9, 2025). District

[83] Courts may consider documents that are a matter of public record, including those from public administrative proceedings, without converting a Rule 12(b)(6) motion to a motion for summary judgment. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

The Court considered the following exhibits from defendants, which pertain to related proceedings before the Louisiana CSC: R. Doc. No. 16-9 (Letter from Beba to the CSC, regarding Whistle Blower Appeal, dated Jul. 16, 2025); R. Doc. No. 16-10 (CSC Order denying Whistle Blower Appeal, CSC Dkt. 9756, dated Sep. 12, 2025); R. Doc. No. 16-11 (CSC Order Granting Appeal of CSC Denial to the Louisiana Fourth Circuit, Court of Appeal, CSC Dkt. 9756); R. Doc. No. 16-12 (CSC Order Denying Beba's Disciplinary Appeal, regarding EMT course statements, CSC Dkt. 9707, dated Sep. 5, 2025).

## IV.    ANALYSIS

### A.    <u>Subject Matter Jurisdiction</u>

Defendants allot significant space to argue that this Court lacks subject matter jurisdiction over Beba's federal claims. According to defendants, this Court lacks subject matter jurisdiction because Beba's claims are solely related to his employment with NOFD, the Louisiana Constitution and state law allocate the authority to hear such claims to the Louisiana CSC, and a final judgment has not been rendered with respect to his CSC appeal.[84] At its heart, defendants' argument is that the Louisiana Constitution preempts and strips this Court of the jurisdiction conferred to it by the U.S. Constitution and Congress.

This is a remarkable argument from defendants, particularly in the context of Title VII employment discrimination claims and constitutional claims pursuant to 42 U.S.C. § 1983, as courts have repeatedly upheld a plaintiff's right to bring such causes of action in federal court even when state remedies are available. *See Ganheart v. Brown*, No. 17-43, 2017 WL 3991182, at *2 n.1 (E.D. La. Sep. 11, 2017) (Africk, J.) ("[A]t its heart, the City's argument was that the Louisiana Constitution strips this Court of jurisdiction conferred by Congress pursuant to its authority under Section V of the Fourteenth Amendment . . . The Court suggests, however, that the City should consider the merits of its position before raising it again in a Title VII case."), *aff'd*, 740 F. App'x 386 (5th Cir. 2018); *see also Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) ("We think that Congress may, in determining what is 'appropriate legislation'

---

[84] R. Doc. No. 16-1, at 7–12.

16

for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts."); *Chisley v. Richland Parish School Board*, 448 F.2d 1251, 1252 (5th Cir. 1971) ("[E]xhaustion of either state judicial or administrative remedies is not a prerequisite to the invocation of federal relief under [§ 1983]."); *see also* U.S. Const. Art. VI, cl. 2.

Furthermore, the City's reliance on state law, which is not binding on this Court, and *Sincere v. Westcott*, No. 25-2099, 2026 WL 406646, at *3, 4 (E.D. La. Feb. 13, 2026) (Barbier, J.), is misplaced. *Sincere* is irrelevant here because it concerned alleged disability discrimination in violation of Louisiana state law and the federal Rehabilitation Act. 2026 WL 406646, at *1. *Sincere* found that the federal court lacked subject matter jurisdiction over the plaintiff's claims because they alleged state statutory violations within the exclusive jurisdiction of the CSC. *Id.* at *4.

In comparison, Beba only alleges federal law claims pursuant to § 1983, Title VII, and the FMLA. These causes of action are not within the exclusive jurisdiction of the CSC. *See, e.g., Jackson v. St. Charles Par. Hous. Auth. Bd. of Commissioners*, 441 F. Supp. 3d 341, 355 (E.D. La. 2020) (Ashe, J.) ("Defendants' argument misses the mark: while the CSC may have jurisdiction to hear certain state-law discrimination claims in conjunction with its exclusive jurisdiction over termination claims, it does not have jurisdiction to hear § 1983 claims."); *see id.* at 357, 361 (finding that this Court also had jurisdiction over the plaintiff's FMLA and Title VII claims).

Additionally, defendants' suggestion that the Court should apply the principles of res judicata to the CSC administrative process and pending appeal in state court is unavailing.[85] Pursuant to 28 U.S.C. § 1738, "'decisions that come from a judicially reviewed action by a state administrative body' . . . . receive the same preclusive effect in federal court as they would in the courts of that state." *Morales v. New Orleans City*, No. 23-30340, 2024 WL 3026779, *2 (5th Cir. June 17, 2024) (per curiam) (quoting *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir. 1997)). However, "a litigant pursuing a job bias claim [is] entitled to reach either a state or federal court, and [can] have that claim foreclosed only after receiving a full and fair opportunity to litigate that claim in either one of those fora." *Levitt v. Univ. of Texas at El Paso*, 847 F.2d 221, 227 (5th Cir. 1988) (citing *Kremer v. Chem. Const. Corp.*, 456 U.S. 461 (1982)). The parties do not represent that Beba's claims before the CSC have received judicial review. Accordingly, at this juncture, the Court will not afford the state administrative proceedings any preclusive effect.

Finally, the Court agrees with Beba that defendants' argument for abstention based on the Louisiana Code of Civil Procedure, articles 531 and 532, is entirely without merit. That state procedural rules do not apply to federal courts is well-settled law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Federal courts apply federal procedural rules. *Id.*; Fed. R. Civ. P. 1. As state procedural rules, articles 531 and 532 provide no authority for "stay[ing] proceedings in federal court." *See A.K. Suda, Inc.*

---

[85] *Id*. at 10–11 (citing *Tillman v. Westwego Police Dep't*, No. 12-1032, 2012 WL 5830572 (E.D. La. Nov. 16, 2012) (Knowles, M.J.)).

*v. Searex, Inc.*, No. 96-4165, 1997 WL 180407, at *1 (E.D. La. Apr. 14, 1997) (Clement, J.). Furthermore, absent narrow exceptions, "federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358 (1989). Here, the Court has already determined that it has jurisdiction and defendants have not advanced any arguments for abstention based on federal law.

### B.    Constitutional Claims Pursuant to § 1983

Beba asserts two constitutional claims, alleging First Amendment retaliation and deprivation of procedural due process, pursuant to § 1983. "Section 1983 provides a claim against anyone who 'under color of any statute, ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting § 1983). To state a § 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Id.* (cleaned up). A plaintiff must allege a violation of a specific constitutional or statutory federal right to be entitled to relief pursuant to § 1983. *Howard v. Ferrand*, No. 22-701, 2023 WL 346082, at *3 (E.D. La. Jan. 20, 2023) (Vance, J.).

### i.    *Beba fails to state a claim for First Amendment retaliation.*

Beba claims that his statement during his EMT course was a matter of public concern and that the defendants retaliated against his speech by "initiating discipline

and removing him from command."[86] "To succeed in a First Amendment retaliation claim under § 1983, a public employee must show: '(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action.'" *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015). Beba "must plead that the individual defendants' 'animus against [his] exercise of First Amendment rights is a link in the causal chain'" that led to his adverse employment action. *Jones v. Hosemann*, 812 F. App'x 235, 239 (5th Cir. 2020) (per curiam) (quoting *Sims v. City of Madisonville*, 894 F.3d 632, 639 (5th Cir. 2018)) (alterations in original).

Defendants challenged Beba's speech on all four prongs. The Court will first consider the parties' arguments with respect to the second and third prongs, "both of which are legal questions 'for the court to resolve.'" *Gibson v. Kilpatrick*, 838 F.3d 476, 481 (5th Cir. 2016) (citations omitted). If Beba did not speak as a citizen on a matter of public concern, then he "has no First Amendment cause of action based on his . . . employer's reaction to the speech." *Garcetti*, 547 U.S. at 418. Even if the second prong is satisfied, if he has not alleged facts supporting a plausible inference that his

---

[86] R. Doc. No. 20 ¶¶ 111, 135. The Court understands that the discipline and "removal . . . from command" to which Beba refers is his reassignment from the 8th District to a "floating" position. *See id.* ¶ 111. Beba does not assert that defendants terminated his rank as a district chief, with respect to his First Amendment retaliation claim. The Court takes no position with respect to whether Beba's reassignment qualifies as "discipline" as it resolves his claims on other grounds.

interest in speaking outweighed NOFD's interests in managing its employees, then he has failed to state a First Amendment retaliation claim. *Id.*

Although his complaint fails to specifically identify the speech that was a "matter[] of public concern,"[87] Beba's opposition indicates that he was referring to his statements during the EMT course.[88] Defendants do not challenge whether Beba was speaking "as a citizen," but aver that Beba's post is speech on a "purely personal matter" and solely related to an employment decision,[89] and was therefore not "of political, social, or community concern."[90] They also argue that Beba has failed to allege how his interest in speaking on NOFD "promotional practices" during his EMT course outweighed defendants' interest in promoting efficiency in the workplace.[91]

Whether speech is a matter of public concern is a matter of law left to the court. *Graziosi v. City of Greenville, Miss.*, 775 F.3d 731, 736 (5th Cir. 2015). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 186 (5th Cir. 2005) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). In instances where the employee's speech is a mix of public and private concerns, courts examine "whether the private concerns predominate." *Moreau v. St. Landry Par. Fire Dist. No. 3*, 808 F. App'x 225, 228 (5th Cir. 2020).

---

[87] *See id.*
[88] *See* R. Doc. No. 17, at 8.
[89] R. Doc. No. 16-1, at 13–14.
[90] R. Doc. No. 18, at 3.
[91] R. Doc. No. 16-1, at 14.

First, the Court agrees that speech detailing a public safety department's unlawful and discriminatory promotion practices likely addresses a public concern. *See, e.g.*, *Johnson v. Halstead*, 916 F.3d 410, 422 (5th Cir. 2019) (analyzing claims of racial hostility at a police department as analogous to allegations of public corruption and official misconduct). However, here, the content of Beba's statement indicates that he was airing a personal grievance rather than seeking to inform the public about supposed wrongdoing within NOFD. "Speech that 'is related only to [a] superior's employment decisions' and that affects a plaintiff 'in a purely personal manner' is not a matter" of public concern. *See Espinoza v. San Benito Consol. Indep. Sch. Dist.*, 753 F. App'x 216, 224–25 (5th Cir. 2018) (quoting *Gibson*, 838 F.3d at 484). Even where speech mixes personal employment grievances with issues "that could arguably be considered public matters," the content of a plaintiff's speech may weigh against finding that it was on a matter of public concern. *See id.* at 225. Despite the bold attempts at contortionism in his opposition, in which he argues that he was speaking on issues of public safety and "integrity,"[92] Beba's statement predominantly addresses personal concerns about his failure to obtain a promotion and desire to increase his retirement pension.

Beba complained that he "experience[ed] setbacks in the promotional process" because he was not a "DEI candidate."[93] His statement does not reference nor clearly call out any misconduct, discrimination, or violation of laws, and such an

---

[92] R. Doc. No. 28, at 9–10.
[93] R. Doc. No. 18-3, at 7.

extrapolation beyond the actual words of his statement is unwarranted. That Beba's discussion post did not actually allege he was passed over for promotion due to racial discrimination is relevant to the Court's analysis. *See generally Givhan v. Western Line Consolidated School District*, 439 U.S. 410 (1979) (reasoning that a teacher's objection to a supervisor regarding racially discriminatory employment practices was protected speech). As Beba himself apparently recognizes,[94] the intended meaning of his reference to a "DEI candidate," is facially ambiguous and does not necessarily refer to an unlawful or discriminatory employment practice. *See, e.g.*, *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 167 F.4th 86, 103–04 (4th Cir. 2026) (recognizing that references to diversity equity and inclusion policies ("DEI") do not inherently implicate violations of antidiscrimination laws); *id.* at 104 (Diaz, C.J., concurring) ("Defendants represented at oral argument that there is 'absolutely' DEI activity that falls comfortably within the confines of the law.").

Other than a vague aspersion to DEI impacting his attempts at promotion, Beba's statement does not touch on any potential topics of public interest. For example, his reference to DEI does not voice an opinion regarding the impact of DEI policies on NOFD's ability to promote public safety nor address any viewpoint on the topic of DEI at all. Beba only states his personal belief that someone else was

---

[94] *Compare* R. Doc. No. 16-12, at 3 ("Chief Beba testified he was referring to the preference given to . . . military service, not to any racial preference."), *with* R. Doc. No. 9-3, at 7 (stating in his EEOC charge that his comments were in reference to "lower-ranked Black candidates" promoted ahead of him). These statements exhibit the ambiguous nature of Beba's comments, regardless of their truth.

promoted over him "because he fits more the description of a DEI promotion."[95] At its core, Beba's statement is that he feels he is more qualified to be deputy chief than a colleague promoted over him.[96] Thus, even within the confines of his slight reference to DEI, the nature of his statement is airing a personal grievance, which weighs against finding that his statement was a matter of public concern. *Gibson*, 838 F.3d at 485.

Additionally, Beba's pleading recognizes that he was airing a personal objection to the NOFD's "operation, leadership, and promotion practices."[97] This type of speech is decidedly personal. *See Connick*, 461 U.S. at 148 (finding speech that "did not seek to inform the public that [the plaintiff's employer] was not discharging its governmental responsibilities . . . [nor] seek to bring to light actual or potential wrongdoing or breach of public trust" was not a public concern and was instead aimed at a "dispute over [the plaintiff's] transfer to another section); *Espinoza*, 753 F. App'x at 224–25 (finding that police officers' allegations of sexual harassment and misconduct within the department did not outweigh the personal nature of speech largely targeting wage issues, internal grievances, and "management policies"); *Moreau*, 808 F. App'x at 226–27, 229 (reasoning that a social media post from a firefighter stating that the fire department was "ruled by good old boy politics . . .

---

[95] R. Doc. No. 18-3, at 7.

[96] Notably, Beba does not allege that the candidate promoted over him was unqualified, just that he was less qualified with respect to one trait.

[97] R. Doc. No. 20 ¶ 50.

[and a] board of clueless idiots making the decisions that affect many" was "akin to an internal grievance").

Undoubtedly, Beba's reference to DEI injects a "scintilla of speech regarding a matter of public concern," mixing "both personal and private concerns." *Gibson*, 838 F.3d at 485 (quoting *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 826 (5th Cir. 2007)). Nevertheless, the Court finds that because Beba's statement was focused on "internal employment grievances, personal concerns predominate." *Id.*

Second, the form of his speech, a post on a class discussion board, while not open to the public but available to his classmates, who were NOFD firefighters, other first responders, and members of the public, may weigh in Beba's favor. *Cf. Moreau*, 808 F. App'x at 226–27, 229. (finding that speaking through social media weighed towards finding the speech a public concern). However, unlike other forms of modern speech through digital mediums, he does not allege that his post was directed at, available to, or meant to inform anyone beyond the participants in his EMT course. *See Chavez v. Brownsville Indep. Sch. Dist.*, 135 F. App'x 664 (5th Cir. 2005) ("Chavez did not seek to distribute this flyer to the press or the citizenry at large outside of the school district . . . any publicization was incidental.").

Third, the personal nature of Beba's speech is all the more apparent in the context of his full statement, in which he goes on to explain that part of his reason for enrolling in the EMT course was to "secure a 5% increase in [his] pension going forward cutting [the] loss of not getting the promotional 10%."[98] Essentially, absent

---

[98] R. Doc. No. 18-3, at 7.

NOFD offering a 5% compensation increase for completing the EMT course, Beba would not have been in a position to make the statement at issue. Additionally, his speech was directed at a small audience that included multiple NOFD employees and other first responders.[99] Taken together, these facts make it difficult to plausibly characterize the context in which Beba was speaking as directed toward advancing public discourse on NOFD's promotional practices. The context of Beba's speech was purely personal; he was not speaking "against a backdrop of widespread debate in the . . . community." *Tompkins v. Vickers*, 26 F.3d 603, 607 (5th Cir.1994).

On balance, the Court finds that Beba's comments were directed at advancing his grievance against defendants for not promoting him, which he attributed to, in his opinion, a DEI policy. "Speech 'made solely in furtherance of a personal employer-employee dispute' isn't public—and generally, 'an employee speaks in furtherance of his personal employer-employee dispute when he discusses personnel matters directly impacting his job or criticizes other employees or supervisors' job performance.'" *Moreau*, 808 F. App'x at 229 (quoting *Salge*, 411 F.3d at 187–88). Accordingly, his statement during the EMT course was not on a matter of public concern and is not entitled to First Amendment protection.

Finally, the Court agrees with defendants that Beba's interest in speaking is outweighed by NOFD's in promoting an efficient workplace. NOFD "has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's

---

[99] *See id.* at 4–9.

operations." *Garcetti*, 547 U.S. at 418. That Beba's speech also concerned his personal experience with NOFD's promotional practices, and was directed towards other members of NOFD, lends additional weight to defendants' position that Beba's actions challenged NOFD's operational efficiency. *See Connick*, 461 U.S. at 153. Beba's statement both disparages his colleague, a ranking member of NOFD leadership, and suggests that his reason for obtaining EMS training is for personal monetary reasons rather than public service. Such a statement reasonably impacts NOFD's "substantial interest in maintaining workplace trust and efficiency" and undermines "amicable workplace relationships." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 420 (5th Cir. 2023). Thus, Beba's interest in speaking about perceived unfairness in his lack of professional advancement is outweighed by his employer's "interest in an efficient, harmonious work environment." *Id.*

In sum, the Court finds that personal concerns predominate Beba's statement, and even to the extent it marginally touches a topic of public concern, his interest in speaking did not outweigh NOFD's interest in managing its employees. Accordingly, Beba's claims for First Amendment retaliation are dismissed, and the Court need not consider whether Beba's reassignment was an adverse employment action. *See Moreau*, 808 F. App'x at 228 (citing *Garcetti*, 547 U.S. at 418).

27

### ii.  *Beba fails to plausibly state a claim for deprivation of procedural due process.*

Beba asserts that defendants violated his right to procedural due process when he was reassigned from his post in the 8th District.[100] "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023).

"The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1014 (5th Cir. 2023) (quoting *Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017)). "Moreover, '[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it . . . [He] must, instead, have a legitimate claim of entitlement to it.'" *Id.* (alteration in original) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

Although he does not allege that he was terminated, demoted from the rank of district chief, or deprived of an economic interest with respect to his procedural due process claim, according to Beba, he had a "protected property interest" in his 8th District post.[101] Essentially, Beba argues that although he retained his rank and title

---

[100] Like his First Amendment claim, Beba does not allege a procedural due process violation with respect to his eventual, and since rescinded, termination.
[101] R. Doc. No. 20 ¶ 138.

when he was transferred, he was deprived of a protected interest in exercising his prior duties as a district chief for the 8th District.

The Fifth Circuit has rejected public-employee claims of entitlement when reassignment does not economically impact the plaintiff and does not deprive them of professional duties guaranteed by contract or state law. *See, e.g, Kelleher v. Flawn,* 761 F.2d 1079, 1086–87 (5th Cir. 1985) (finding that an "assistant instructor" that was reassigned had no guaranteed right to teach a particular course); *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 754 (5th Cir. 1986) (reasoning that an athletic director possessed a property interest in salary associated with coaching the football team but "did not have such an interest in the continuation of his coaching responsibilities"). Other than an ambiguous reference to NOFD "established policies . . . and practices," Beba does not assert any cognizable right to the responsibilities that he possessed before his reassignment.[102] Indeed, the facts Beba alleges indicate that he retained the duties of a district chief post-transfer, and that his transfer was simply to a "floating position" without fixed authority in any one district.[103] *Cf. Kelleher*, 761 F.2d at 1086–87 (finding no due process violation where plaintiff was reassigned from "lecture to nonlecture duties" because she retained her position as an assistant instructor and her duties post-reassignment were consistent with those associated with her position as an assistant instructor).

---

[102] *Id.*

[103] *Id.* ¶¶ 67, 69.

For these reasons, the Court finds that Beba has failed to establish that he possessed a protectable property interest in his 8th District post sufficient to support a cognizable procedural due process claim, and it need not reach the parties' other arguments. Beba's procedural due process claims are therefore dismissed.

### iii.    *Beba fails to plausibly allege municipal liability for constitutional violations*

Although he alleges the preceding constitutional violations against New Orleans and other individual defendants, Beba also pleaded municipal liability as a separate count for the same alleged constitutional violations against New Orleans.[104]

As this Court has already determined that Beba did not plausibly allege any constitutional violations in his complaint, he has therefore also failed to plausibly allege any claim against New Orleans for the same. *See Castille v. Port Arthur ISD*, 168 F.4th 240, 256 (5th Cir. 2026) ("We do not reach the issue of *Monell* liability for Defendants since Defendants committed no constitutional violations under the alleged facts."); *Albert v. City of Petal*, 819 F. App'x 200, 203 (5th Cir. 2020) (noting that without a constitutional violation, there can be no *Monell* claim); *Brown v. Wilkinson Cnty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) (holding that because the plaintiff failed to establish any underlying constitutional violations, the claims against the county and individual defendants failed).

### C.    **Family and Medical Leave Act Claims**

Beba alleges two causes of action pursuant to the Family and Medical Leave Act ("FMLA")—FMLA interference and FMLA retaliation. He asserts that the

---

[104] *Id.* ¶ 147.

disciplinary proceedings he was subject to both interfered with his FMLA leave and constituted retaliation for his taking FMLA leave.[105] The only disciplinary action initiated during his FMLA leave that Beba complains of is the April 23, 2025 notice of investigation (the "April 2025 notice") that he received, concerning his March 20, 2025 statements.[106] Other than an ambiguous reference to the notice he received concerning "violations related to an email exchange," Beba does not explain the details of the investigation or his participation in any proceedings related to the investigation.[107]

Beba also claims that hearings held after his FMLA leave, on July 16, 2025, and November 25, 2025, which culminated in his since-rescinded notice of involuntary retirement on December 9, 2025, were retaliation for "taking FMLA leave."[108] Defendants submit that Beba has failed to plausibly allege either an FMLA interference or retaliation claim.

### i.    *Beba fails to plausibly allege FMLA interference.*

To establish FMLA interference, a plaintiff must allege that "(1) he was an eligible employee, (2) his employer was subject to the FMLA, (3) he was entitled to FMLA leave, (4) he notified his employer of his intent to take FMLA leave, (5) his employer interfered with his exercise of FMLA rights, and (6) he was prejudiced as a result." *Park v. Direct Energy GP, L.L.C.*, 832 F. App'x 288, 293 (5th Cir. 2020); *see also Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 526–27 (5th Cir. 2021) (reasoning

---

[105] *Id.* ¶ 115.
[106] *Id.* ¶ 80.
[107] *Id.* ¶¶ 78–82.
[108] *Id.*

that the plaintiff must show prejudice because "a violation of an FMLA regulation does not alone entitle the plaintiff to relief") (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002)).

"The FMLA requires a covered employer to allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017) (internal quotation marks and citation omitted). "To protect this statutory right, the FMLA bars covered employers from interfering with the right of an employee to take such leave." *Luebano v. Off. Depot, L.L.C.*, No. 22-50767, 2023 WL 4249268, at *4 (5th Cir. June 29, 2023) (citing 29 U.S.C. § 2615(a)(1)).

Presumably because he did in fact take approved FMLA leave,[109] defendants do not challenge that Beba satisfies the first four elements of an FMLA interference claim. However, they argue that Beba has failed to plausibly allege that receiving the April 2025 notice of investigation prejudiced him and he has therefore not pleaded a plausible FMLA interference claim.[110] They argue that without more than conclusory assertions that defendants interfered with or discouraged his right to FMLA leave, the Court should dismiss Beba's claim.

Beba pleads that NOFD's actions "placed pressure on [him] during his leave, [and] undermined his ability to fully utilize that leave for its intended medical

---

[109] *Id.* ¶ 77.
[110] R. Doc. No. 16-1, at 19–20.

purpose."[111] His only support for this is the assertion that NOFD's disciplinary investigations discouraged or "chill[ed]" the exercise of his FMLA rights because the notice of investigation "required a response."[112] Beba also argues, without citing any support, that requiring a response in a disciplinary investigation "constitutes [FMLA] interference."[113]

However, the FMLA does not entitle employees to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B); *see also Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 681–82 (5th Cir. 2013) (citing *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999)).

Furthermore, Beba's pleadings are notably absent of any claims that he did, in fact, respond to the April 2025 notice during his FMLA leave, or that he did not respond and was prejudiced by that failure.[114] As such, Beba's arguments rest on his unsupported premise that a disciplinary investigation is the type of activity that may discourage an employee from exercising his FMLA rights.

---

[111] R. Doc. No. 20 ¶ 115.

[112] R. Doc. No. 17, at 14–15.

[113] *Id.*

[114] The notice of investigation states, "[i]t is the department's intent to give [you] . . . an opportunity to be heard . . . The investigation will initiate with your response to the incident via submission of a special report." R. Doc. No. 16-4. The notice does not provide a deadline for Beba's submission of the "special report," nor does it describe any aspects of the investigation requiring his participation or appearance. *Id.* Neither party has alleged that Beba submitted a "special report."

When analyzing whether discouragement rises to the level of FMLA interference, "court[s] consider whether the employer's actions would 'discourage any reasonable employee from exercising FMLA rights.'" *See Adams v. Columbia/HCA of New Orleans, Inc.*, No. 24-30588, 2025 WL 1937294, at *3 (5th Cir. July 15, 2025) (per curiam) (quoting *Park*, 832 F. App'x at 293–94). Plaintiffs must be able to "show [they were] prejudiced by any discouragement," otherwise the FMLA "provides no relief." *Id.* (quoting *Ragsdale*, 535 U.S. at 89); *see also* 29 U.S.C. § 2617.

To establish prejudice, a plaintiff must show "1) compensation and benefits lost by reason of the violation; 2) monetary losses sustained as a direct result of the violation; or 3) appropriate equitable relief, including employment, reinstatement, and promotion." *Moreno v. Dealer Integrated Servs., L.L.C.*, No. 25-20470, 2026 WL 1286835, at *6 (5th Cir. May 11, 2026) (citation modified) (quoting *Ragsdale*, 535 U.S. at 89). Furthermore, the Fifth Circuit has "held that a plaintiff who exhausts her FMLA leave cannot allege that her employer interfered with her right to take such leave." *Luebano*, 2023 WL 4249268, at *4.

Beba's FMLA leave was approved, he does not allege that he received less than the required twelve weeks,[115] and he currently retains the rank and position that he possessed before taking FMLA leave.[116] He also does not allege any loss of compensation, benefits, or monetary value due to FMLA interference. The Court

---

[115] Beba's original complaint states that he received FMLA leave from March 25, 2025 through June 15, 2025, approximately twelve weeks. R. Doc. No. 1 ¶¶ 29, 32.
[116] R. Doc. No. 20 ¶¶ 8, 77.

agrees with defendants and finds that Beba has not plausibly claimed any prejudice arising from the alleged FMLA interference.

Rather than provide factual allegations identifying a particular FMLA right at issue, interference with that right, or discouragement from exercising that right, Beba argues that "[w]hether Defendants' actions interfered with Plaintiff's leave presents a factual question not suitable for resolution at the pleading stage."[117] He is incorrect. He "must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010). He offers little more than general invocations of statutory remedies as legal conclusions completely devoid of even scant facts plausibly alleging that he suffered harm from FMLA interference. Thus, Beba's FMLA interference claim must be dismissed.

### ii.    *Beba fails to state a claim for FMLA retaliation*

To establish an FMLA retaliation claim a plaintiff must allege "that (1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 305 (5th Cir. 2021).

As to the retaliation claim, defendants repeat their argument that issuing a notice of investigation is not an adverse employment action and assert that Beba has

---

[117] R. Doc. No. 17, at 15.

not provided any facts supporting a causal connection between his FMLA leave and any other adverse actions that he may allege.[118] Further, they contend that Beba "selectively omits pleadings to show there was no retaliation other than . . . [notice of] an investigation" unrelated to his FMLA leave.[119]

Beba counters that he established an FMLA retaliation claim by alleging that defendants instituted the April 2025 disciplinary investigation and subsequent proceedings as retaliation for his exercise of FMLA rights.[120] Beba argues that the temporal proximity of when the April 2025 investigation began, i.e., during his FMLA leave, is sufficient to establish causation.[121] He does not respond to defendants' arguments that he has failed to allege a causal connection, temporal or otherwise, between his FMLA leave and any of the other proceedings that he claims were retaliation, namely the involuntary retirement hearings that began on July 16, 2025.

Employees on FMLA leave are not immune from disciplinary proceedings for workplace misconduct. *Cf. Jackson v. St. Charles Par. Hous. Auth. Bd. of Commissioners*, 441 F. Supp. 3d 341, 360 (E.D. La. 2020) (Ashe, J.) ("Simply being on FMLA leave [would] not insulate [plaintiff] from being lawfully terminated for the same conduct which prompted her suspension." (cleaned up) (quoting *Terry v. Promise Hosp. of Ascension, Inc.*, 2014 WL 4161581, at *10 (M.D. La. Aug. 19, 2014))). Additionally, Beba has not alleged any adverse actions occurred during his FMLA

---

[118] R. Doc. No. 16-1, at 19–20.

[119] *Id.* at 21.

[120] R. Doc. No. 17, at 15.

[121] *Id.*

leave other than his receipt of the notice of investigation. In particular, he has not alleged that any hearings, disciplinary action, or other adverse outcome resulted from the April 23, 2025 notice.[122] For these reasons, the Court finds that simply issuing the April 2025 notice of investigation during his leave, without more, is not an adverse employment action.

Finally, to the extent his allegations concern the involuntary retirement hearings held after his FMLA leave, Beba has not provided sufficient evidence to infer a causal connection between the proceedings and his FMLA leave. Unlike the April 2025 notice, Beba does not allege temporal proximity between the involuntary retirement proceedings and his FMLA leave. *Cf. Hester*, 11 F.4th at 305–06 (finding that a temporal link supported inference of retaliation because plaintiff was terminated during FMLA leave). Nor does he allege any other basis allowing the court to make a reasonable inference of causation. The facts he does plead, which detail his ongoing employment struggles that began before his FMLA leave and continued well after, indicate that FMLA retaliation was not a motivating cause of his involuntary retirement. *See Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 584–85 (5th Cir. 2006) (finding that the plaintiff's awareness of performance issues and that he received reprimands before taking leave weighed against finding a causal connection for FMLA retaliation).

---

[122] Further, while Beba cries foul about receiving the April 2025 notice of investigation, in the same breath, he criticizes his March 2025 disciplinary charge for lacking such a notice. *See* R. Doc. No. 20 ¶¶ 115, 140. He goes so far as to advocate that he is owed a right to "notice of investigation and a proper pre-disciplinary process." *Id.* ¶ 140.

Beba's complaint fails to plausibly allege an adverse action causally connected with his FMLA leave. The Court therefore concludes that Beba has not plausibly alleged FMLA retaliation and must dismiss his claim.

### D.   Title VII Discrimination Claims

Count III of Beba's complaint challenges four discrete employment outcomes as adverse employment actions with respect to his Title VII discrimination claim, specifically: "denial of promotional opportunities;" reassignment from a "command position" to a "materially diminished role;"[123] "initiation and escalation of disciplinary proceedings;" and "denial of employment benefits."[124] Beba alleges that each of these adverse actions is the result of disparate treatment because of his race.[125]

For the reasons stated herein, Beba has failed to plausibly allege a cause of action for Title VII discrimination.

### i.   *Beba fails to plausibly allege a timely claim for failure to promote.*

Defendants argue that, with respect to his failure to promote claims, for deputy chief promotions that occurred in March 2022, August 2024, and December 2025, Beba has failed to satisfy Title VII's timeliness and administrative exhaustion requirement, pursuant to 42 U.S.C. § 2000e-5(e).[126] Beba does not advance any legal arguments disputing defendants' position that the March 2022 and August 2024 promotions are time-barred from providing discrete actionable adverse employment

---

[123] Although Beba sometimes describes his "removal" and "reassignment" as two separate actions, the Court treats them as one occurrence. Any "removal" to which Beba refers is implicit in his reassignment; they are not distinct from each other.
[124] R. Doc. No. 20 ¶ 121.
[125] *Id.* ¶ 123.
[126] R. Doc. No. 26, at 6–7.

actions for his failure to promote claim. With respect to the December 2025 promotion, for which defendants argued Beba failed to satisfy the § 2000e-5(e) administrative exhaustion requirement, Beba took the necessary steps to obtain notice of his right to sue from the EEOC while defendants' motions were pending.[127] Beba argues that his third amended complaint alleges a plausible cause of action for Title VII discrimination derived from the December 2025 promotion.[128]

"Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Ganheart*, 2017 WL 3991182, at *2 (quoting *Taylor v. Books A Million*, Inc., 296 F.3d 376, 378–79 (5th Cir. 2002)). Further, "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002) (internal quotations omitted).

"Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice for which administrative remedies must be exhausted." *Ekaidi v. Bd. of Supervisors of the S. Univ. Sys.*, No. 16-7523, 2017 WL 699821, at *2 (E.D. La. Feb. 22, 2017) (Africk, J.) (citation modified) (quoting *Morgan*, 536 U.S. at 114). "Each discrete act—such as 'termination, failure to promote, denial of transfer, or refusal to hire'—must be timely

---

[127] R. Doc. No. 34.
[128] *See generally id.*

challenged and exhausted before the Court will consider that act as the basis for an independent claim." *Id.* (quoting *Morgan*, 536 U.S. at 114). These discrete acts are typically "easy to identify" in an EEOC charge. *Brooks v. Firestone Polymers*, LLC, 70 F. Supp. 3d 816, 837 (E.D. Tex. 2014) (quoting *Morgan*, 536 U.S. at 114). Title VII plaintiffs in Louisiana must file a charge of discrimination with the EEOC within 300 days of when the alleged discriminatory act occurred. *See* 42 U.S.C. § 2000e–5(e)(1); *see also Conner v. Louisiana Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007) (explaining that the 300-day rule for filing an EEOC charge in deferral states applies to claims arising in Louisiana).

"Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process[.]" *McClain*, 519 F.3d at 273. However, "the scope of an EEOC charge should be liberally construed for litigation purposes because Title VII 'was designed to protect'" laypersons. *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 519 F.2d 455, 465 (5th Cir. 1970)). Therefore, courts in the Fifth Circuit construe administrative charges in terms of the investigation that can reasonably be expected to grow out of them. *See id.*

In his EEOC complaint, filed September 23, 2025, Beba complained of "a pattern of discriminatory promotion practices, where lower-ranked Black candidates were promoted ahead of [him] despite [his] higher standing on the promotional registry."[129] Beba's complaint specifically identifies three "lower-ranked" individuals outside of his class that he alleges were promoted ahead of him—deputy chiefs

---

[129] R. Doc. No. 9-3, at 7.

Herman Franklin, Zachary Gremillion, and Ryan Woods.[130] The parties do not dispute that the respective promotions occurred on or about March 27, 2022 (Franklin, the "March 2022 promotion"); August 16, 2024 (Gremillion, the "August 2024 promotion"); and December 28, 2025 (Woods, the "December 2025 promotion").[131]

First, the Court agrees with defendants that § 2000e-5(e) bars Beba's failure to promote claims with respect to the March 2022 and August 2024 promotions because they were not brought to the EEOC within 300 days of the alleged violations. *See Ganheart*, 2017 WL 3129803, at *2 (citing *Morgan*, 536 U.S. at 109). Thus, Beba's claims regarding the March 2022 and August 2024 promotions are time-barred and must be "dismissed with prejudice because granting leave to amend would be frivolous." *See id.*

Second, defendants were correct that, with respect to the December 2025 promotion, Beba had not satisfied the administrative exhaustion requirement of

---

[130] R. Doc. No. 20 ¶ 125.

[131] *See* R. Doc. No. 29. It is not lost on the Court that Beba included promotion dates for Herman and Gremillion in his initial complaint and deleted them after the defendant argued that they fall outside the 300-day window to be considered timely for inclusion in Beba's September 23, 2025 EEOC charge. *Compare* R. Doc. No. 1 ¶¶ 18, 19 (Beba alleging in his original complaint that Franklin and Gremillion were promoted over him on the aforementioned dates), *and* R. Doc. No. 9-1, at 11 (defendants arguing that the Franklin and Gremillion promotions are time-barred), *with* R. Doc. No. 11 (Beba omitting from his first amended company any allegations of specific individuals promoted over him), *and* R. Doc. No. 20 ¶¶ 92, 125 (Beba adding back to his second amended, operative, complaint specific allegations regarding the Franklin and Gremillion promotions but omitting the dates they occurred). The Court granted Beba multiple opportunities to correct the deficiencies in his pleadings with additional facts. The Court was not expecting Beba to delete factual assertions that were unfavorable to his arguments although initially certified as accurate.

41

§ 2000e-5(e) at the time he filed his second amended complaint.[132] However, Beba has since cured this issue. After defendants filed their second motion to dismiss, Beba filed an EEOC complaint detailing the alleged discriminatory December 2025 promotion and obtained notice of his right to sue.[133] Nevertheless, as defendants argue,[134] and the Court agrees, although Beba has now obtained EEOC notice of his right to sue, his claims with respect to the December 2025 promotion, for reasons stated later in this opinion, do not survive the Rule 12(b)(6) standard.[135] Accordingly, as Beba still fails to plausibly allege a viable cause of action for a failure to promote, and further amendment to his complaint is futile,[136] dismissal with prejudice is warranted. *See Burke v. Ocwen Loan Servicing, L.L.C.*, 855 F. App'x 180, 187 (5th Cir. 2021).

### ii.    *Beba fails to state a claim for Title VII discrimination.*

A review of the amended complaint leaves the reader speculating as to what conduct, even if taken as true, plausibly supports a Title VII discrimination claim. As best the Court can discern, beyond his failure to promote claims, Beba asserts three other disparate treatment claims: (1) he claims that his reassignment was "selective enforcement of policies and deviation from standard practices";[137] (2) he alleges that

---

[132] An EEOC investigation into the December 2025 promotion would not "reasonably be expected to grow out of the charge of discrimination" that Beba filed in September 2025. *See Sanchez*, 519 F.2d at 466. The claim could not have been alleged in the EEOC charge before it occurred. *Ganheart*, 740 F. App'x at 390–91.

[133] *See generally* R. Doc. No. 34.

[134] *See generally* R. Doc. No. 36.

[135] *See* discussion *infra* Section IV.E.i.

[136] *Id.*

[137] R. Doc. No. 20 ¶¶ 121, 128, 131.

he received disparate discipline with respect to "insubordinate or unprofessional" speech because an African American member of NOFD engaged in similar conduct and was not investigated or disciplined;[138] and (3) he also represents that he received disparate treatment in the dispensation of benefits—specifically, approval for leave due to an on-duty injury ("ODI leave").[139]

To survive defendants' motion to dismiss, Beba's "complaint must allege enough facts to give rise to a reasonable hope or expectation that discovery will reveal evidence of the foregoing elements of" a Title VII disparate treatment claim. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009). Beba "[must] plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (alteration in original) (quoting *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)). "[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (internal quotations omitted).

At the pleading stage, a Title VII plaintiff is not required to establish a prima facie case of discrimination pursuant to the framework prescribed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Chhim*, 836 F.3d at 470. However, "when a complaint purports to allege a case of circumstantial evidence of

---

[138] *Id.* ¶¶ 127–28.
[139] *Id.* ¶¶ 129–30.

discrimination, it may be helpful to refer to" the *McDonnell Douglas* framework to analyze "whether [the] plaintiff has sufficiently pleaded an adverse employment action taken 'because of' his protected status.'" *Olivarez*, 997 F.3d at 600 (citing *Cicalese*, 924 F.3d at 767).

    1.    <u>*Beba plausibly alleges an adverse employment action.*</u>

"Title VII . . . does not permit liability for de minimis workplace trifles." *Hamilton v. Dallas County*, 79 F.4th 494, 505 (5th Cir. 2023). To state an actionable Title VII claim, plaintiffs must identify an adverse employment action constituting a harmful change to a "term or condition" of employment. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). Beba complains that his reassignment from a "fixed" position in the 8th District to a "floating" staff position reduced his "supervisory authority," and provided him with fewer "leadership responsibilities."[140]

Defendants argue that Beba's reassignment was not an adverse employment action because he cannot show the transfer harmed him.[141] Defendants' position is that it was an "operational reassignment," Beba's responsibilities did not change, and he maintained the "supervisory authority and leadership authority" of a district chief.[142] Beba counters that his reassignment was adverse because it "reduced the prestige associated with his position, and reassigned him to a floating staff assignment," covering multiple districts, and "lacking the authority and stability of his prior command."[143]

---

[140] *Id.* ¶ 37.
[141] R. Doc. No. 26, at 4.
[142] *Id.* at 4–5.
[143] R. Doc. No. 28, at 2–3; R. Doc. No 20 ¶ 37.

44

Beba argues that his case is analogous to *Hamilton*. *Hamilton* involved a facially discriminatory policy where "only male officers are given full weekends off," and it was "clear[ly] . . . plausible that requiring female officers to work weekends but not male officers is a tangible, objective, and material instance of sex discrimination in the terms, conditions, or privileges of employment." 79 F.4th at 505 (internal quotation marks omitted). "The days and hours that one works are quintessential 'terms or conditions' of one's employment . . . [and] go to the very heart of the work-for-pay arrangement." *Id*. Unlike *Hamilton*, Beba has not alleged that his reassignment was the product of a facially discriminatory policy; nor does his alleged adverse action—on its face a lateral transfer—clearly implicate a harmful change to a "quintessential term or condition" of his employment.

Nevertheless, even a lateral transfer may amount to an adverse action if the plaintiff is left objectively worse off. *See Paulin v. United States Dep't of Homeland Sec.*, No. 19-14748, 2021 WL 4742946, at *4 (E.D. La. Oct. 12, 2021) (Vance, J.). When analyzing whether a new position is objectively worse, courts in the Fifth Circuit have "looked to whether the new position was objectively more arduous or less prestigious, whether the new position had worse hours, whether it would objectively be viewed as a demotion or as embarrassing, and whether the new position stripped the employee of 'significant responsibilities.'" *Id*. (citing *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473 (5th Cir. 2008)); *see also id*. (reasoning that "reduced title and responsibility" and the plaintiff's declaration that his new position was "an entry-level, non-supervisory position" indicated that the transfer was less prestigious). This approach

is amenable to the Supreme Court's holding in *Muldrow*, that a change in the terms or conditions of the plaintiff's employment, such as a transfer, need only cause "*some harm.*" *See* 601 U.S. at 350 (emphasis added).

While a close call, Beba's involuntary lateral transfer plausibly caused him "some harm." *Id*. Beba's allegations—that the "floating" nature of his new position is more arduous, is less prestigious, and diminishes his supervisory authority—are plausible. Although the facts alleged in his complaint only barely push his claims across the line from possible to plausible, that is enough at the pleading stage to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678; *see also Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *5 n.5 (5th Cir. Oct. 8, 2024) (recognizing that the plaintiff may have plausibly alleged an adverse employment action because "[m]any forced transfers leave workers worse off respecting employment terms or conditions" (quoting *Muldrow*, 601 U.S. at 355)).

Therefore, reading all well-pleaded facts as true and drawing inferences in a light most favorable to Beba, the Court finds that for the purposes of the present Rule 12(b)(6) motion, he has sufficiently alleged "some harm" stemming from his reassignment. *See Muldrow*, 601 U.S. at 350.

2.    *Beba fails to plausibly allege that his race motivated any adverse employment action.*

Regardless of whether his reassignment was an adverse employment action, Beba's claim ultimately fails in establishing the requisite causal connection between his reassignment and his employer's discriminatory animus. Beba has not alleged sufficient facts that would allow this Court to "draw the reasonable inference that the

46

defendant is liable for the misconduct alleged." *See Stone v. Louisiana Dep't of Revenue*, 590 F. App'x 332, 339 (5th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Generally, allegations sufficient to plausibly support an inference of disparate treatment will detail the events leading up to the adverse employment action, provide relevant dates, and include the relevant characteristics of at least some of the individuals involved with the plaintiff's adverse employment action. *See Cicalese*, 924 F.3d at 768 (citing *Swierkiewicz*, 534 U.S. at 514). Absent direct evidence of discriminatory animus, plaintiffs may draw circumstantial comparisons to similarly situated employees that received preferential treatment to support a plausible inference of discrimination. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995). However, the comparable circumstances must be "nearly identical." *Id.*; *see also Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1100 (5th Cir. 1985) (finding that comparison must involve "essentially identical" conduct).

Additionally, although Beba is not required at the pleading stage to show that a similarly situated non-white employee was treated more favorably, *Cicalese*, 924 F.3d at 767, this comparison is the only factual assertion he pleads in support of his "disparate discipline" claim.[144] Unlike the plaintiffs in *Cicalese*, who alleged with specificity remarks from their supervisors derogatory of their nationality, *see id.* at 767–68, Beba offers no direct evidence to support his claims. Aside from the similar situated comparators that he offers as circumstantial evidence, his other primary assertions, "that African American employees were treated more favorably, that

---

[144] *Id.* ¶¶ 95, 127–128.

African American employees were not disciplined for comparable conduct . . . and that Defendants selectively enforced policies against Plaintiff,"[145] are conclusory and insufficient to plausibly signal discriminatory motive. *See Thornton v. Univ. of Texas Sw. Med. Ctr. Sch. of Med.*, No. 24-10594, 2025 WL 619166, at *3 (5th Cir. Feb. 26, 2025) (reasoning that "conclusory assertions" that the plaintiff was "treated differently and less favorably . . . than other similarly situated employees [outside of his class] . . . [u]nder the same or similar circumstances" was insufficient because "[a]t the pleading stage, we require facts—not conclusory allegations"); *Whitlock v. Lazer Spot, Inc.*, 657 F. App'x 284, 286–87 (5th Cir. 2016) (reasoning that a plaintiff's allegation that his workplace rule infraction was pretext for racial discrimination because he "was punished for infractions that white employees were not punished for" was insufficient to state a Title VII claim).

As such, Beba's allegation of discriminatory animus rests on comparing his discipline to a confrontation where an allegedly similarly situated "African American employee," Jerome Baudy, sent Beba "a written communication," directed him to "'stay out of [his] district,' accus[ed] [Beba] of misconduct, and refus[ed] further communication."[146] According to Beba, he "reported this conduct through the appropriate channels," but Baudy was not investigated or disciplined, and "was later assigned to a permanent command position during the same general time period."[147]

---

[145] R. Doc. No. 28, at 4.

[146] R. Doc. No. 20 ¶ 95. Because Beba does not provide any additional context, it is unclear to the Court whether or not this altercation stems from the same March 20, 2025 email that prompted Beba's April 2025 disciplinary investigation.

[147] *Id.* ¶¶ 97–99.

In the context of workplace policy violations, a plaintiff can plead facts supporting a plausible inference that discrimination motivated their disparate treatment "by showing" (1) "that he did not violate the rule," or (2) that, if he did violate the rule, employees outside of his protected class "who engaged in similar acts were not punished similarly." *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)); *see also McCloud v. McDonough*, No. 22-10357, 2023 WL 2525656, at *3 (5th Cir. Mar. 15, 2023) (reasoning that disciplinary action against a plaintiff must have a causal link to the plaintiff's protected characteristic to support a discrimination claim).

Beba does not claim that he did not violate NOFD's harassment and discrimination policy.[148] Instead, he argues that defendants disparately enforced NOFD's Workplace Harassment & Discrimination Policy against him while "African American employees . . . were not disciplined . . . for [more] severe conduct."[149]

---

[148] However, the Court notes that Beba's conclusory allegations concerning "disparate discipline" are convoluted and are repeatedly offered as circular proof for each count in his complaint. *See, e.g.*, R. Doc. No. 20 ¶¶ 4, 57–67, 78–81,111,115, 121, 128, 138, 146 (repeatedly asserting, without any additional support, that "disciplinary investigations" and "disciplinary escalation" with respect to his conduct are evidence of Title VII discrimination, First Amendment Retaliation, FMLA Retaliation, and deprivation of due process rights, because the investigation and disciplinary process were discriminatory and/or retaliatory).

[149] *Id.* ¶¶ 127–28. Prior to filing his second amended complaint, Beba's opposition to defendants' motion argued that his allegations of disparate treatment are sufficient because he "was replaced by someone outside his protected class." R. Doc. No. 17, at 12. This argument appears to be in reference to Ussin being reassigned to Beba's prior role in the 8th District. *See* R. Doc. No. 20 ¶ 68. However, as Beba admits, he had recently been found to have violated workplace misconduct rules, and the mere fact alone that an African American district chief took over his responsibilities after his

However, Beba has not provided sufficient factual support to infer that the situation with Baudy is "essentially identical" to the circumstances for which he was disciplined. *See Cicalese*, 924 F.3d at 768 (reasoning that a Title VII plaintiff's complaint must "allege[] sufficient facts to 'nudge[] their claims across the line from conceivable to plausible'") (quoting *Twombly*, 550 U.S. at 547)). Beba's complaint does not describe the events leading up to the confrontation between himself and Baudy, provide the relevant dates, explain to whom he reported the incident, nor identify the relevant supervisors involved. He also does not allege that Baudy's conduct violated NOFD's harassment and discrimination policy, the policy Beba was disciplined for violating, nor does he allege that Baudy committed any form of harassment or discrimination at all.[150]

Due to the dearth of factual support for his allegations, the Court cannot plausibly infer that Beba's race motivated disparate treatment in the disciplinary process. *See Olivarez*, 997 F.3d at 600 (finding the plaintiff's pleading insufficient because it lacked facts showing "that any non-transgender employee with a similar job and supervisor and who engaged in the same conduct as Olivarez received more

---

violation is insufficient to support an inference of discrimination. *See Yarbrough v. SlashSupport, Inc.*, 152 F.4th 658, 666 (5th Cir. 2025) ("Yarbrough's only evidence of discrimination is that an Asian employee took over QA duties. But he cannot 'simply rel[y] on the fact that the other employees are' not black." (quoting *Bryant*, 413 F.3d at 477)). In any event, Beba appears to abandon this theory with respect to his Title VII discrimination claims in his second amended complaint and supplemental briefing. *See generally* R. Doc. Nos. 20, 28.

[150] Considering that Beba states that Baudy also accused him of misconduct but does not allege that defendants investigated him because of Baudy's accusations, Beba's complaint suggests that he and Baudy were in fact treated similarly in that neither of them was investigated for this altercation.

favorable treatment"); *Thornton*, 2025 WL 619166, at *3 (holding that without alleging that a comparator outside of his protected class, with the same job responsibilities, managed by the same supervisor, committed the same disciplinary infraction, "but was not terminated," the plaintiff's complaint was "not enough" to support his discrimination claim); *Lee v. Kansas City S. Ry. Co.,* 574 F.3d 253, 259–260 (5th Cir. 2009) ("Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated."). Additionally, Beba's sparse factual pleadings and the weakness of the harm he alleges as an adverse employment action only further weigh against him with respect to whether he has pled facts plausibly supporting an inference of discriminatory intent. *See Muldrow*, 601 U.S. at 358 (reasoning that Title VII discrimination "requires that the employer have acted for discriminatory reasons . . . in addressing that issue, a court may consider whether a less harmful act is, in a given context, less suggestive of intentional discrimination" and thus, "courts retain multiple ways to dispose of meritless Title VII claims challenging transfer decisions").

Beba's final disparate treatment claim is that defendants denied him "ODI status and required him to use accrued sick leave," while "similarly situated Deputy Chief Larry White, an African American employee, was granted ODI status during the same general time period and received corresponding benefits."[151] Beyond the preceding conclusory statement, Beba does not provide any facts that suggest White

---

[151] R. Doc. No. 20 ¶¶ 102, 130.

is actually similarly situated to Beba, nor does Beba plead facts demonstrating that he was treated differently than White because of his race. Once again, he seeks to infer discriminatory intent by comparing his treatment to that of a similarly situated employee, but fails to provide even minimal plausible factual support for his claim that the employee was similarly situated. *See Thornton*, 2025 WL 619166, at *3 (finding that "conclusory assertions that other employees were 'similarly situated' . . . is not enough"). "The complaint requires more to plausibly describe Title VII discrimination." *Davis v. Texas Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 455 (5th Cir. 2019). Each claim of disparate treatment that Beba asserts in his complaint is deficient, and he fails to state a claim for Title VII discrimination.

### E.    Motion for Leave to File an Amended Complaint

During the pendency of defendants' current motion to dismiss, Beba filed a motion for leave to file a third amended complaint and attached his intended amended pleadings.[152] In his briefing, Beba also seeks to reassert an abandoned Title VII retaliation claim and requests leave to amend any deficiencies the Court may identify in his complaint.[153]

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to amend pleadings "when justice so requires." "A formal motion is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought." *United States ex rel. Willard v.*

---

[152] R. Doc. No.
[153] R. Doc. No. 28, at 4–5.

*Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). However, "[a] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Id.* (quoting *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)).

Although Rule 15 "evinces a bias in favor of granting leave to amend," it is not automatic. *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999); *United States ex rel. Lin v. Mayfield*, 773 F. App'x 789, 790 (5th Cir. 2019). A decision to grant leave to amend is within the trial court's discretion. *Mayfield*, 773 F. App'x at 790. And a trial court may deny a request, even when it is made within the deadline set by a court for seeking leave to amend. *See Mason v. Fremont Inv. & Loan*, 671 F. App'x 880, 883 (5th Cir. 2016) (differentiating the liberal Rule 15 standard for leave to amend, when a request is made before the court's deadline for requesting leave to amend, from the more stringent Rule 16 standard, requiring a showing of good cause if a request is made after the court's deadline).

Pursuant to Rule 15, a "district court must possess a 'substantial reason' to deny a request for leave to amend." *Id.* (quoting *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)). These reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182

(1962). "[A]n amended complaint is futile 'if the complaint as amended would be subject to dismissal.'" *Rohi v. Brewer* (*In re ABC Dentistry, P.A.*), 978 F.3d 323, 325 (5th Cir. 2020) (quoting *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014)). Futility is evaluated "under the same standards as a dismissal under Rule 12(b)(6)." *Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 437 (5th Cir. 2021) (citing *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)).

For the following reasons, the Court denies Beba's requests to amend his complaint further.

### i.    *Beba's proposed third amended complaint is futile.*

Beba's proposed third amended complaint seeks to add two new counts of Title VII discrimination and retaliation to his complaint with respect to defendant's promotion of Ryan Woods to deputy chief on December 28, 2025, and corresponding failure to promote Beba.[154] Defendants filed supplemental briefing regarding the proposed amendments.[155] Beba filed a response.[156]

---

[154] R. Doc. No. 34-1 ¶¶ 172–192. The Court notes that defendants had also previously alerted Beba to the administrative exhaustion requirement for Title VII claims in their first motion to dismiss, filed March 10, 2026. *See* R. Doc. No. 9; R. Doc. No. 9-1, at 11. Beba subsequently filed two amended complaints on March 18, 2026, and April 27, 2026, respectively. R. Doc. Nos. 11, 20. Considering the promotion occurred in December 2025, Beba had ample notice and opportunity to administratively exhaust his claims with respect to the December 2025 promotion and include them in either of his amended complaints. However, he only sought to file his new claims with the EEOC after a ruling on defendants' motions was imminent. *See* R. Doc. No. 33, at 4; *see also* R. Doc. No. 29 (informing the parties it would "consider defendants' argument that Beba's disparate promotion claims do not satisfy the requirements of 42 U.S.C. § 2000e-5(e) as an issue for Rule 56 summary judgment").
[155] R. Doc. No. 36.
[156] R. Doc. No. 37.

As explained below, the Court will deny Beba's motion for leave to file a third amended complaint because even considering his proposed amendments, he fails to plausibly allege a claim for relief and therefore the proposed amendments are futile. *See Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

With respect to his failure to promote claim, Beba must "at least" plead facts supporting "a reasonable inference of plausibility that (1) [he] belongs to a protected class; (2) [he] applied for and was qualified for a position for which applicants were being sought; (3) [he] was rejected; and (4) a person outside of [his] protected class was hired for the position." *Davis*, 761 F. App'x at 454 (citing *Chhim*, 836 F.3d at 470). If a plaintiff did not apply for the position, they "must plead facts 'that such an application would have been a futile gesture.'" *Id*.

Beba's third amended complaint also asserts that he was qualified for a promotion to deputy chief, but denied the opportunity to compete for it because of his race.[157] He also alleges that he interviewed for a promotion to deputy chief in September 2024.[158] Beba does not claim that this interview placed him in contention for a promotion more than a year later in December 2025. Instead, Beba alleges that he was excluded from the process because of his race.[159] However, even favorably construing his September 2024 interview as applying for the December 2025 promotion, Beba "fails to plead sufficient facts to make a plausible claim that" he was

---

[157] R. Doc. No 34-1 ¶¶ 105, 109, 174.
[158] *Id*. ¶ 97.
[159] *Id*. ¶¶ 104–05, 108.

not promoted to deputy chief "*because* of his race, color, or national origin." *Chhim*, 836 F.3d at 470–71 (emphasis in original).

Defendants argue that Beba fails to plausibly assert that he was qualified for promotion on December 28, 2025, because he was notified of his employment termination on December 15, 2025, and because he had represented to NOFD that he was medically unable to return to work from March 23, 2025 through his December 2025 termination, for an indefinite period of time.[160] Beba's counter, that defendants' arguments are factual disputes not suitable for resolution on a motion to dismiss and that his employment was not terminated in December 2025,[161] are unpersuasive and inconsistent with his own pleadings in this matter.

First, there is no dispute regarding the facts that defendants point to as undermining the plausibility of Beba's claims. Beba's argument that he was not terminated until the effective start date of his involuntary retirement, January 2, 2026, is inconsistent with Beba's previous representations to this Court.[162] Beba initiated this lawsuit on December 19, 2025, stating in his complaint that he received a "written Notice of Separation *terminating* [his] employment" on December 15, 2025.[163] Similarly, his pleadings establish that he was out of work, without an anticipated return date, from March 2025 through his termination in December

---

[160] *See* R. Doc. No. 35, at 2–4.
[161] *See generally* R. Doc. No. 36.
[162] *Id*. at 5.
[163] R. Doc. No. 1 ¶ 39 (emphasis added).

2025.[164] Beba himself made these representations, and there is no factual dispute before the Court.

Beba incorrectly rests his opposition on a mistake of law, arguing that a conclusory statement alleging that he was qualified for promotion is sufficient at the pleading stage.[165] It is well settled that to enter the realm of plausibility, a claim must include factual support beyond mere "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Beba does not plead, nor does he argue in his briefs, any facts towards a plausible inference that—despite his termination and indefinite medical leave—he was qualified for promotion to deputy chief in December 2025.

Between the "obvious alternative explanation," available from the face of Beba's complaint, "and the purposeful, invidious discrimination" that Beba asks the Court "to infer, discrimination is not a plausible conclusion." *Id*. at 682. Furthermore, considering the factual circumstances of Beba's employment status at the time of the December 2025 promotion, the Court does not reasonably expect discovery to reveal "that the elements of the claim existed." *Lormand*, 565 F.3d at 257 (citing *Twombly*, 550 U.S. at 555). Accordingly, Beba's proposed amendment alleging discrimination "stops short of the line between possibility and plausibility of 'entitlement to

---

[164] *See* R. Doc. 1 ¶¶ 29, 32–33.
[165] *See* R. Doc. No. 36, at 2–4.

relief.'"[166] *Edelstein v. City of Brownsville*, No. 20-40211, 2021 WL 4096581, at \*5 (5th Cir. Sep. 8, 2021) (quoting *Iqbal*, 556 U.S. at 678).

Beba's amendment advancing a retaliation claim similarly fails. Beba alleges that he was not promoted in December 2025 in retaliation for, among other reasons, filing his EEOC complaint in September 2025.[167] To state a claim for Title VII retaliation, Beba must allege facts supporting plausible inferences that "(1) [he] engaged in activity protected by Title VII; (2) that [he] was subject to an adverse employment action; and (3) a causal connection [exists] between [his] participation in the protected activity and the adverse employment decision." *Davis*, 761 F. App'x at 455. As the Court has already explained, Beba has not provided sufficient facts to plausibly infer that he was eligible for the December 2025 promotion, or that he was excluded from the related promotional process for reasons other than his extended absence from work or termination proceedings. Thus, he fails to plausibly plead that he was subject to an adverse employment action (a failure to promote). Even if he did plausibly plead an adverse employment action, he fails to provide sufficient factual support to infer a causal link between the defendants' promotional decision and his EEOC complaint.

---

[166] The Court is not concerned that its ruling will "allow . . . employer[s] to avoid a failure-to-promote claim simply by issuing an unlawful termination notice." *Id*. at 5. The obvious reason being that if an employee is terminated because of their race, then their termination is the adverse employment action upon which to base a Title VII claim. Beba's decision to pursue a failure to promote claim instead of a termination claim is his own. Also relevant is that Beba received notice that he was at risk of termination or involuntary retirement in June 2025, six months before the promotion occurred. *See* R. Doc. No. 16-5.

[167] R. Doc. No. 34-1 ¶¶ 106–07.

The only argument that Beba advances in support of a causal link is an alleged temporal proximity between the promotion and his filing of an EEOC complaint.[168] However, even ignoring the intervening event of his termination on December 9, 2025, this argument fails. Beba's termination proceedings began as early as July 2025, well in advance of his EEOC complaint in September 2025. Furthermore, the approximate three-month gap between the promotion and his EEOC complaint is on the fringe of what courts in the Fifth Circuit deem sufficiently close in time to plausibly claim a causal connection absent additional support. *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (explaining that the Fifth Circuit has found that "to establish causation by timing alone," two-and-a-half months, two months, and a period of six-and-a-half weeks between the protected act and adverse employment action are sufficient). Additionally, he does not allege any facts "to suggest that those responsible for [promotion] decisions knew about" his EEOC complaint. *See Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 336–37 (5th Cir. 2023) (finding the plaintiff failed to allege facts supporting an inference of retaliation).

The Court therefore finds that Beba has not plausibly alleged that his EEOC complaint motivated defendants' decision-making with respect to the December 2025 promotion. Thus, Beba's proposed amendment alleging Title VII retaliation is futile.

---

[168] *Id.* ¶ 189; *see also* R. Doc. No. 36, at 6.

### ii.    *Beba's request to reassert abandoned claims is futile and dilatory.*

Separately, in his opposition to defendant's motion to dismiss, Beba attempts to resurrect a previously abandoned claim for Title VII retaliation.[169] Beba's original complaint broadly alleges that any adverse employment action he suffered was in retaliation for his engaging in Title VII protected activity.[170] His second amended complaint is devoid of any such claim; thus, his broad Title VII claim was abandoned.[171] *See Stewart v. City of Houston Police Dep't*, 372 F. App'x 475, 478 (5th Cir. 2010) (reasoning that in omitting a previously asserted Title VII discrimination claim from their amended complaint, the plaintiffs had abandoned the claim).

In the Fifth Circuit, "[g]enerally, a new claim or legal theory raised in response to a dispositive motion should be construed as a request for leave to amend the complaint, and the district court should determine whether leave should be granted." *Pierce v. Hearne Ind. Sch. Dist.*, 600 Fed. App'x. 194, 200 (5th Cir. 2015) (citing *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n. 2 (5th Cir. 2008)). However, Courts may deny leave to amend when a plaintiff seeks to reassert an abandoned claim and fails to provide new facts or allegations to support the reasserted claim. *See Lafaye v. City of New Orleans*, No. 20-41, 2023 WL 7026944, at *5 (E.D. La. Mar. 10, 2023) (Morgan, J.) (citing *State of La. v. Litton Mortg. Co.*, 50 F.3d 1298, 1303–04 (5th Cir. 1995)). Beba's argument is conclusory and does not provide any facts plausibly supporting a retaliation claim, nor does it provide the Court with any

---

[169] R. Doc. No. 28, at 4–5.
[170] R. Doc. No. 1 ¶¶ 60–65.
[171] *See generally* R. Doc. No. 20 ¶¶ 117–133 (only alleging Title VII Discrimination).

factual justification as to why he should be granted leave to reassert his abandoned claims. Thus, there is substantial reason to deny him leave to do so.

### iii.    *Beba's repeated failure to cure his pleading deficiencies weighs against granting further opportunity to amend.*

Finally, the Court similarly finds that there is substantial reason to deny Beba's broad request for further opportunity to amend his complaint to cure any deficiencies the Court identifies in his complaint.[172] District courts may deny leave to amend when there has been "undue delay" or "repeated failure to cure deficiencies by amendments previously allowed." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (quotations omitted). Beba has "previously filed two amended complaints" and "failed to cure the defects in those complaints" despite extensive briefing on the issues. *See Olivarez*, 997 F.3d at 602 n.2 (5th Cir. 2021) (citing *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 567 (5th Cir. 2002)).

Beba has had "ample opportunity" to plead these claims and address any deficiencies through amendment; the Court need not entertain further fruitless attempts to amend the same. *See Herrmann Holdings Ltd.*, 302 F.3d at 567 (finding that denial of further leave to amend was not an abuse of discretion because the plaintiffs had "already filed an original complaint and two amended complaints, each alleging [similar] claims," they had been "given ample opportunity to plead their statutory claims"). Beba has already presented this Court with four versions of his complaint, each of which has failed to plausibly state a claim sufficient to survive Rule 12(b)(6). The Court does not need to undertake this process for a fifth time.

---

[172] R. Doc. No. 17, at 21.

Dismissal of Beba's complaint is warranted—he has repeatedly failed to cure his pleading deficiencies and "remain[s] unable to persuasively explain how [he] could amend [his] complaint in a manner that would state a plausible claim for relief." *See Burke*, 855 F. App'x at 187.

Beba has also not apprised the Court of how he would rectify any newly identified deficiencies, and courts routinely deny such bare requests for leave to amend. *See, e.g.*, *Kovalchuk v. Wilmington Sav. Fund Socy.*, No. 21-40281, 2021 WL 5119705, at *2 (5th Cir. Nov. 3, 2021) (affirming the district court's denial of a request for leave to amend for being insufficiently particular when it asked to amend "any other cause of action which the Court determines should be dismissed"); *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 331 (5th Cir. 2003) (affirming the district court's decision to deny leave to amend for being insufficiently particular when the plaintiff asked to "file amended pleadings adding additional plaintiffs and facts as allowed by law").

As such, the Court finds substantial reasons to deny Beba's request for leave to amend his complaint.

## V.     CONCLUSION

Accordingly,

**IT IS ORDERED** that defendants' motion[173] to dismiss Beba's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is **DENIED**.

---

[173] R. Doc. No. 16.

**IT IS FURTHER ORDERED** that defendants' motion for partial summary judgment, pursuant to Rule 12(d) and Rule 56 of the Federal Rules of Civil Procedure, is **GRANTED IN PART**, in that the March 2022 and August 2024 promotions are untimely alleged as adverse employment actions pursuant to Title VII; and **DENIED IN PART**, in that Bebe has satisfied Title VII's administrative exhaustion requirement with respect to the December 2025 promotion.[174]

**IT IS FURTHER ORDERED** that Beba's motion[175] for leave to file a third amended complaint is **DENIED** as futile.

**IT IS FURTHER ORDERED** that defendants' motion[176] to dismiss Beba's complaint is **GRANTED**. Beba's complaint against defendants is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, August 4, 2026.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[174] Beba received his EEOC notice of right to sue, with respect to the December 2025 promotion, while defendants' motion for partial summary judgment was pending. Therefore, Beba satisfied Title VII's administrative exhaustion requirement. Accordingly, the Court considered Beba's allegations concerning the December 2025 promotion on the merits pursuant to Rule 12(b)(6).

[175] R. Doc. No. 34.

[176] R. Doc. No. 16.